377 So.2d 1266 (1979)
Robert Earl COLLINS
v.
DIVISION OF FOSTER CARE, JEFFERSON PARISH, FAMILY DIVISION.
No. 10065.
Court of Appeal of Louisiana, Fourth Circuit.
September 11, 1979.
*1268 Jerome Friedman, Metairie, for defendants-appellees.
New Orleans Legal Assistance Corp., Earl T. Lindsay, Jr., New Orleans, for plaintiff-appellant.
Before SAMUEL, LEMMON and STOULIG, JJ.
LEMMON, Judge.
Plaintiff, the alleged natural father of an illegitimate child, has appealed from a judgment on the pleadings which held that and act of surrender, executed by the natural mother pursuant to R.S. 9:402, terminates all parental rights under the express terms of R.S. 9:404. On appeal plaintiff's sole assignment of error is the unconstitutionality of R.S. 9:404.
Plea of Unconstitutionality
Since plaintiff in the trial court simply alleged his status, his desire for custody, and defendant's refusal of his request, defendant urges as a threshold issue that a plea of unconstitutionality cannot be raised for the first time on appeal.
A plea of unconstitutionality requires one branch of government to determine the validity of an act of another branch. Because of the serious and delicate nature of such a determination, a plea of unconstitutionality should not be considered unless absolutely necessary to the disposition of the case.
Using this rationale, courts have formulated general rules or guidelines governing consideration of constitutional issues. One of the general rules is that a litigant who fails to plead the unconstitutionality of a statute in the trial court cannot raise the constitutional issue in the appellate court. Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971). Like all general rules, however, this judicially formulated guideline is subject to numerous exceptions. Summerell v. Phillips, above; Long v. Northeast Soil Conservation Dist. of La., 226 La. 824, 77 So.2d 408 (1954); State v. Holmes, 305 So.2d 409 (La.1974), Summers, J., dissenting. And when the interest of justice requires, appellate courts frequently remand cases for the purpose of pleading the unconstitutionality of a statute. Summerell v. Phillips, above; Bye v. Giarruso, 292 So.2d 742 (La.App. 4th Cir. 1974).
In the present case defendant's answer justified its action solely on the basis of express provisions of R.S. 9:404. Thus, the validity of the statute was framed by the pleadings in the trial court as the decisive issue in the case, and review by the appellate court of a judgment on the pleadings would be meaningless if the issue of the statute's validity were ignored. Moreover, plaintiff points out that, after the decision in the trial court, a similar statute was declared unconstitutional in Caban v. Mohammed, 441 U.S. 380, 99 S.Ct. 1760, 60 L.Ed.2d 297 (1979), and the subsequent declaration of unconstitutionality in another case is one of the recognized exceptions to the rule limiting appellate review of constitutional issues to those pleaded in the trial court. Summerell v. Phillips, above; Harris v. Monroe Bldg. & Loan Ass'n., 185 La. 289, 169 So. 343 (1936).
Accordingly, the jurisprudence allows, and the interest of justice requires, the constitutional issue to be considered in this case. Since the correctness of the facts alleged in the pleadings is conceded in the briefs and no additional facts are required to determine the constitutional issue, there is no necessity for a remand, and we proceed directly to a determination of constitutionality of the statute relied upon by defendant.
Facts
The child was born on July 14, 1977. On October 17, 1977 the child's mother executed an authentic act of voluntary surrender pursuant to R.S. 9:402.[1] On June 5, *1269 1978, after the present suit was filed and after defendant excepted to plaintiff's right to obtain custody without having acknowledged or legitimated the child, plaintiff executed a notarial act of acknowledgment of an illegitimate child.
Constitutionality of R.S. 9:404
R.S. 9:404, in the chapter pertaining to the voluntary surrender and abandonment of children, provides:
"A surrender by the mother of a child born out of wedlock who has not been formally acknowledged or legitimated by the father terminates all parental rights except those pertaining to property. The same shall be true as to a court order of abandonment. However, no surrender or court order of abandonment as to only one living parent of a legitimate child shall be binding upon the other living parent."
Under the statutory scheme neither the father nor the mother of a legitimate child, acting alone, can terminate the parental rights of the other. However, as to an illegitimate child the mother alone, by executing an act of surrender pursuant to R.S. 9:402, may terminate all parental rights, unless the father has formally acknowledged or legitimated the child.
Thus, R.S. 9:404 creates classifications based upon illegitimacy and gender. The constitutional inquiry is whether the statutory classification (1) invidiously discriminates against a particular class and (2) is reasonably related to a permissible state objective.
Equal protection concepts require courts to refrain from enforcing legislation which provides dissimilar treatment for men and women who are similarly situated. Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). However, mothers and fathers of illegitimate children, from a realistic standpoint, are not similarly situated. Parham v. Hughes, ___ U.S. ____, 99 S.Ct. 1742, 60 L.Ed.2d 269 (1979).
Maternal identification and paternal identification for illegitimate children vary vastly in the degree of difficulty. Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). The identity of the mother of an illegitimate child is certain at birth and is thereafter memorialized by required documentation. On the other hand, the identity of the father is usually unknown, unless the father voluntarily comes forth and acknowledges or legitimates the child. Under R.S. 9:404 the father who so identifies himself is treated the same as the identified mother, but the father who does not is treated differently from the mother, because he is plainly not in a situation similar to the mother's.
The statute in question accordingly cannot be held to discriminate against fathers of illegitimate children as a class; rather, it distinguishes between fathers who have acknowledged or legitimated their children and those who have not.[2] Such a classification has a reasonable basis and does not constitute an invidious discrimination against a particular class based on gender.
As to classification based on illegitimacy, a statute is clearly unjust and unconstitutional if it imposes a different burden on, or confers different benefits to, an illegitimate child who has no individual responsibility for the reprehensible circumstances of his birth. Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). Using this rationale, the Supreme Court of the United States in the Weber case struck down a Louisiana statute which denied equal rights of recovery of workmen's compensation benefits by relegating unacknowledged illegitimate children of the deceased to a lesser priority status.
R.S. 9:404 does not penalize illegitimate children, but rather denies parental *1270 rights to fathers who were responsible for conceiving an illegitimate child and who had the opportunity to change the child's status by acknowledging or legitimating him, but failed to do so.[3] (By disallowing the parental right to block adoptions, the statute actually prevents the father from arbitrarily denying his children the benefit of legitimacy, which he declined to confer upon them. If the father who declines to legitimate his children were also allowed to block their adoption, the children would remain illegitimate forever in order to protect the father's "rights".) While a state may not logically or justly penalize the innocent product of an irresponsible union outside of marriage, the state may condemn the person responsible for such a union by denying parental rights when the person fails to change the status of bastardy of the innocent victim.[4]Parham v. Hughes, above.
Because it is entirely within the power of the father to remove himself from the disability that only he will suffer, the statute in the present case is distinguishable from that declared unconstitutional in the Caban case, where custody was denied to a father who had been named in the birth certificate and had supported the children for several years.[5]Parham v. Hughes, above, Powell, J., concurring.
The last equal protection inquiry involves the relationship of the statutory classification to a permissible state objective.
It is evident that the state has a legitimate interest in promoting legitimacy and in facilitating adoption in appropriate cases. The difficulty of identifying the father of an illegitimate child for such purposes as support and adoption is also a matter of legitimate state concern. Lalli v. Lalli, above; Parham v. Hughes, above. Since limitation of the privilege of asserting parental rights of custody and of consent to adoptions to fathers who have established their paternity by acknowledging or legitimating their children is a rational solution to the problem of identification of the father of an illegitimate child, the statutory classification is reasonably related to a permissible state objective. Furthermore, R.S. 9:404 not only gives a caring father an incentive to accept his parental responsibility (while having no effect on indifferent fathers), but also promotes the interest of the child, of charitable and governmental agencies, of adoptive parents, and of society in general. These interests must be weighed against those of a father in the present case (insofar as the record shows) who never formed a part of the child's family unit and never even informally acknowledged the child prior to filing this suit.
Finally, citing Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), plaintiff argues entitlement to protection *1271 against arbitrary state action as a matter of due process.
The Stanley case held that a father who had raised his illegitimate children was entitled as a matter of due process to a hearing on his fitness as a parent before the state could take the children from him. However, the heart of the decision was that this protection was denied to all unmarried fathers, regardless of their interest in or relationship with the children.
Due process is required before persons can be deprived of rights to which they are constitutionally entitled. R.S. 9:404 affords due process protection to a father who is entitled to parental rights because he has identified himself as such and assumed his parental responsibilities and obligations. Plaintiff has not shown any basis for entitlement to a cognizable parental right which should be protected by due process considerations. Furthermore, by alleging that the act of surrender was executed over his objection, plaintiff has admitted he had prior notice of the October, 1977 surrender and took no action until this suit was filed seven months later.
The judgment is affirmed.
AFFIRMED.
SAMUEL, Judge, concurs with written reasons.
I cannot agree that, as suggested in the majority opinion, unconstitutionality which has been pleaded for the first time on appeal may be considered when, as here, the defendant's answer justifies its action "solely on the basis of express provisions" of the attacked statute, or that "the interest of justice requires" such a consideration. In addition I feel it proper to mention that I would follow Weber v. Aetna Cas. & Sur. Co., 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 786, with reluctance and only because of supremacy.
However, as I agree with the result reached by the majority, I respectfully concur.
NOTES
[1] "Any parent of a child, whether the child was born in wedlock or out of wedlock and whether the parent is over or under twenty-one years of age, may surrender the permanent custody of his child to an agency for the purpose of having the child adopted by appearing before a notary and two witnesses and declaring that all of his rights, authority, and obligations, except those pertaining to property, are transferred to the agency. This authentic act shall be signed by the agency and shall constitute a transfer of custody to the agency after which the agency shall act in lieu of the parent in subsequent adoption proceedings. No surrender of the custody of a child shall be valid unless it is executed according to the provisions of this Part."
[2] On this basis the majority in the Parham case distinguished the statute in the Caban case (which is the decision relied on by the father in the present appeal). The statute in the Caban case permits all unwed mothers to block the adoption of their children simply by withholding consent, but prohibits all unwed fathers from doing so.
[3] The prohibition by C.C. art. 200 and 204 against legitimation or acknowledgment of illegitimate children whose parents were incapable of contracting marriage and the inherent constitutional problems are not presently under consideration, because this father did not attempt to legitimate or formally acknowledge the child (or even to informally acknowledge her) until almost a year after her birth.
[4] The two R's of parenthood are rights and responsibilities. A parent who has the responsibility to support, maintain and educate his child and is answerable for the child's torts enjoys the corresponding rights of parenthood. But if a parent fails in these responsibilities with the intention to avoid the responsibilities permanently, he forfeits all parental rights. R.S. 9:403, 404. And if a father of an illegitimate child does not affirmatively indicate his intention to assume these responsibilities, he never acquires the corresponding parental rights.

In Quilloin v. Walcott, 434 U.S. 246, 98 S.Ct. 549, 54 L.Ed.2d 511 (1978) the court upheld a Georgia statute which permitted either parent of a legitimate child and the mother of an illegitimate child to veto an adoption, but refused that right to a natural father who had not legitimated the child by marrying the mother or by obtaining a court order declaring the child legitimate. The court approved Georgia's recognition of the difference in the extent of commitment to a child's welfare between a married father (even if subsequently divorced) and an unmarried father who has never taken any steps toward accepting any significant responsibility toward the child.
[5] The Caban decision held that the statute discriminated "against unwed fathers even when their identity is known and they have manifested a significant paternal interest in the child".