555 So.2d 612 (1989)
STATE of Louisiana In the Matter of the ADOPTION OF S.R.P.
No. 89-CA-1892.
Court of Appeal of Louisiana, Fourth Circuit.
December 28, 1989.
Writ Denied February 2, 1990.
*614 Mark McTernan, McTernan & Parr, New Orleans, for appellee.
Steven Scheckman, New Orleans, and Henry R. Vogt, III, New Orleans, for appellant.
Before SCHOTT, C.J., and LOBRANO and PLOTKIN, JJ.
SCHOTT, Chief Judge.
This appeal is from a final decree of adoption of appellant's natural child by her foster mother. The adoption was granted pursuant to LSA-R.S. 9:422.15 which authorizes an adoption over the objection of an incarcerated parent. At issue is the trial court's overruling of appellant's exception of venue; the constitutionality of the statute and of the procedure employed with respect to the rights of the alleged biological father of the child; the effect of the placement contract between the state and the foster mother; the effect of the conduct of the foster mother indicating her intention not to adopt the child; and whether the court erred in concluding that appellee carried the burden of proof imposed upon her by the statute.
The child was born on November 3, 1987, while appellant was serving a five year prison sentence imposed on August 27 for distribution of cocaine on February 22, 1987. At the hospital, a state social worker discussed with appellant the possibility of placing the child with appellant's family but appellant said her parents were too elderly to care for the baby and she had no other family members who could do so. Consequently, the worker placed the child in the custody of the State Office of Community Services. After attempting to place the child with appellant's family members, on November 13, 1987 the agency entered into a contract with appellee to provide foster care for the child. The contract provided that appellee could not pursue adoption of the child without the agency's consent.
Appellant and her family were under the impression that she would be released from prison in February, 1989 but this was a miscalculation and they learned in January, *615 1989 that the correct release date would be in March, 1990. In February, 1989 appellant's parents in a letter to the agency sought custody of the child. They also filed a motion for custody in the juvenile court's "child in need of care" proceeding which was pending prior to these adoption proceeding. After a hearing on this motion on March 28, the trial court denied the motion citing expert testimony to the effect that it would be harmful to the child to take her away from her foster mother.
On April 5, 1989 the foster mother, appellee, filed a petition to adopt the child pursuant to R.S. 9:422.15. In May, the grandparents also filed a petition for adoption which was dismissed on appellee's exception of no cause of action. In the meantime, appellant responded to appellee's adoption petition with a dilatory exception of prematurity based on the absence of a declaration that the child was abandoned, or that parental rights had been terminated and the absence of an Act of Surrender by the natural father or a showing that he was deceased or that his parental rights had been terminated. On June 14 the trial court overruled the exception and on July 6 appellant moved to dismiss appellee's petition because the trial court lacked venue. The trial court's denial of this motion provides the basis for one of appellants specifications of error to be discussed below.
In the meantime, in June, one J.L.B. filed in the record an acknowledgment, dated June 12, 1989, stating that he is the father of appellant's child. Also, on August 2, 1989 the agency wrote to appellee's attorney stating: "If the court ... determines that it is in the best interest of the child that she be adopted by her foster parent then we would grant a waiver of [the provision of the contract in which appellee agreed not to take action toward adopting the child without the agency's written permission.]" Trial on appellee's adoption petition was held on August 22, 1989. On September 14, 1989 the trial court issued the final decree of adoption with extensive reasons for judgment from which appellant has perfected this appeal.

EXCEPTION OF VENUE
Venue over an adoption proceeding is in the court of the domicile of the petitioner or of the legal custodian of the child. R.S. 9:423. Appellant argues that appellee, who petitioned to adopt the child, was domiciled in Jefferson Parish and that the child's legal custodian was the State Department of Social Services whose domicile is in Baton Rouge. Thus, appellant contends that the Orleans Parish Juvenile Court was without venue. The trial court held that the legal custodian was the Office of Community Services in New Orleans, a division of the Department of Social Services, so that venue was proper in Orleans Parish and that, in any event, appellant waived her objection to the venue when she filed her exception of prematurity.
Where procedures are not governed by the Code of Juvenile Procedure, or otherwise by law, the Code of Civil Procedure is applicable to civil proceedings in Juvenile Court. C.J.P. art. 24. The Code of Civil Procedure provides that an exception of improper venue is a declinatory exception, while prematurity is a dilatory one. C.C.P. arts. 925 and 926. If declinatory and dilatory are not filed together, the late-filed one is waived. Note to art. 928. The court overruled appellant's dilatory exception of prematurity on June 14. On July 6, appellant objected to venue. However, appellant contends that she did not file a declinatory exception, which is controlled by the Code of Civil Procedure, but a motion to dismiss pursuant to C.J.P. art. 65 which is not subject to waiver. This article is within Chapter 9 of the Code dealing with Pre-Adjudication Motions and Relief and is inapplicable to adoption proceedings. Consequently, appellant's argument is without merit and the trial court correctly concluded that she waived her objection to the venue of the court.

CONSTITUTIONAL ARGUMENTS
Appellant's first constitutional argument concerns the evidentiary standard for the burden of proof by which appellee must prove her case for adoption. In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 *616 L.Ed.2d 599 (1982), the court held that where the state seeks to terminate parental rights the standard of proof is that of clear and convincing evidence. Consistently, R.S. 9:403 with respect to abandonment proceedings and R.S. 13:1603 relative to termination of parental rights for abuse and neglect specifically require proof by clear and convincing evidence.
However, R.S. 9:422.15, the statute at issue, is found among the private adoption statutes, which appellant argues employ the mere preponderance of the evidence standard of proof. She contends that the statute's failure to require clear and convincing proof flies in the face of Santosky and makes it unconstitutional per se. We need not consider this argument in this case because the trial judge acknowledged that he was bound to apply the clear and convincing evidence standard mandated by Santosky even though the statute was silent on the subject.
Next, appellant argues that this statute which abrogates her fundamental right to family integrity is subject to strict scrutiny which the statute cannot withstand. She compares the statute with R.S. 13:1601(E)(2)'s reference to the parent's refusal to provide a plan for appropriate care of the child as a ground for termination of parental rights and she argues that the subject statute's failure to require proof of this element causes it to be constitutionally infirm. She refers to evidence that she had a plan for her parents to accept the child in their home which was appropriate and would have prevented termination of her parental rights under R.S. 13:1601(E)(2).
Here again, we do not reach the issue of the statute's unconstitutionality per se based upon the absence of the element contained in the termination of parental rights statute. We are confident that the trial court considered appellant's plan and concluded without error that it was not appropriate because it was not in the best interests of the child. A discussion of the evidence illustrates this point.
Appellant is 38 years of age. In September, 1987 she was convicted of distributing cocaine the previous February and she was sentenced under the Louisiana Habitual Offender Law to five years at hard labor. In November, 1983 she had pled guilty to possession of a stolen car and was sentenced to eighteen months in prison. Her sentence was suspended and she successfully served an eighteen month probation period.
The child at issue herein is appellant's fourth. The first, born in 1973, was adopted by her parents. The second, born in 1975, is in the custody of her former husband. The third, born in 1985, she surrendered for adoption.
Just after the birth of the baby, when interviewed by a social worker and asked if there were relatives who could care for the baby, she stated that she had no siblings and that her parents were unable to provide adequate care for the baby. She did provide the worker with the telephone number of her parents in Florida, but the worker was unable to reach them. She identified the child's father as a drug abuser with whom she wanted the baby to have no contact and whose whereabouts were unknown.
Appellee testified that she attended a conference in the trial court where appellant's parents were present and they stated that their daughter had been a drug abuser for sixteen years. The grandmother denied at trial that she made this statement. Appellant admitted using cocaine "occasionally", but "not very often", twice or three times a year.
A child psychologist testified that based upon appellant's history he thought she had serious psychological problems, probably in the form of a personality disorder, and that she does not attach to or bond with her children; she is probably self-centered, she does not understand the concept of parenting, and the child would be in a "tremendously high risk situation" if placed with the mother. Based upon appellant's past, he thought her prognosis for developing good parenting skills was poor.
The only plan proposed by appellant for the child involved appellant's parents having custody of the child in Florida while appellant served out her prison sentence *617 and upon her release from prison her returning to Florida where she would live with her parents and care for the child. When the grandparents were first contacted by social workers shortly after the baby's birth they were unwilling to take the child because of problems they were having with their son who was seriously injured in an accident. Finally, in February, 1989 they came forward and offered to take the baby. Thereafter, they actively pursued custody of the child. This is not a dispute between appellee and the child's grandparents over custody. It is a question of whether appellee was correctly granted adoption of the child over the objection of appellant. Appellant allowed her parents to adopt her first child born in 1973 and has lived away from him and her parents since then. There is nothing in her history which would indicate that she intends to stay on her parents' farm in Florida and rear her child. On the contrary, the evidence compels the conclusion that her real "plan" is for her parents to rear this child just as they have reared her first child.
Whether or not the statute under scrutiny should have the same type of language as R.S. 13:1601(E)(2) has regarding consideration of an alternative plan proposed by the parent, in this case one was proposed, it was thoroughly considered, and it was properly rejected. Consequently, we find no merit to appellant's contention that her constitutional right to a family bond with her child was violated.
The next constitutional argument advanced by appellant concerns the alleged father of the child. The statute provides that for an adoption of a child to take place over the objections of the incarcerated parent, the evidence must establish that the non-incarcerated parent has surrendered the child for adoption, is deceased, or has had his parental rights terminated. Appellant contends that she was denied due process because the alleged father was not even notified or made a party to these proceedings and that none of the statute's conditions pertaining to him were met.
The total involvement of the alleged father in this case was appellant's identification of him to the case worker shortly after the child's birth in November, 1987 and his acknowledgment of the child dated June 12, 1989 which was filed in the record on June 13. The suit was filed on April 15.
The trial court correctly held that R.S. 9:422.15's reference to the non-incarcerated parent pertains to a legitimate parent or at least one who was listed on the birth certificate or who made a timely acknowledgment of the child. However, this alleged father is in much the same position as the one in Collins v. Division of Foster Care, etc., 377 So.2d 1266 (La.App. 4th Cir.1979). There the mother executed an act of surrender of her three-month-old child on October 17, 1977, pursuant to R.S. 9:402. On June 5, 1978, the alleged father filed suit to obtain custody, the defendant filed an exception contesting his right to relief without having acknowledged or legitimated the child, and plaintiff subsequently executed an act of acknowledgment of his illegitimate child. Plaintiff argued that the statute was unconstitutional because of discrimination against fathers who have not acknowledged or legitimated their children. The court held that the statute does not penalize illegitimate children, but rather denies parental rights to fathers who were responsible for conceiving an illegitimate child and who had the opportunity to change the child's status by acknowledging or legitimating him but failed to do so. In a footnote the court observed that if a father of an illegitimate child does not affirmatively indicate his intention to assume his responsibilities to support, maintain and educate the child, he never acquires corresponding parental rights.
Consequently, the alleged father here, who never came forward until seventeen months after the child's birth, and only after appellee filed her suit, did not acquire the right of a parent because he never assumed or offered to assume any responsibility for the child. The father in the Collins case was at least asserting for himself the restoration of parental rights. Here, the father has made no appearance and asserted no rights. It is the mother *618 who is trying to use his unasserted position as a basis for her plea of unconstitutionality. This argument has no merit.
We have concluded that appellant's constitutional rights have not been violated.

CONTRACT BAR AND ESTOPPEL
The contract between the agency and appellee as the foster mother provides that she is not to take any action toward adopting the child without written permission from the agency. Appellee filed her suit on April 5 and the agency gave written permission on August 2. Appellant argues that the contract made her a third party beneficiary and her rights under the contract were breached when appellee filed her suit without written permission.
While this was a technical violation of the contract by appellee we do not subscribe to the theory that appellant was a third party beneficiary under the contract with standing to enforce this provision. In order to establish a stipulation pour autrui there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract. H.M.C. Management Corp. v. New Orleans Basketball Club, 375 So.2d 700, 708 (La.App. 4th Cir.1979) writ denied, 379 So.2d 11. The terms of the contract do not support the conclusion that the prohibition against suit without agency permission was intended for the benefit of the natural parent. It seems logical that this provision is primarily designed to warn the foster parent at the outset of her relationship with the child that she should not become attached to the child since adoption is frequently only a remote possibility.
In any event, when considered in the light of the entire proceedings, the technical violation of filing the suit without written agency permission was essentially cured when the agency gave permission. Permission was given on August 2, but the case was not tried until August 22. The dismissal of the suit would not have precluded the filing of a new one with the same result in the end.
Appellant's argument regarding the contract prohibition against adoption without written agency permission has more significance in the overall context of the facts. Initially and almost to the eve of the filing of her suit appellee had no intention of adopting the child and she wrote numerous letters to appellant and her parents recognizing that they would be reunited with the child when appellant was freed. Furthermore, from day one the agency was operating under a plan and assumption that the parent and child would be reunited. When the grandparents contacted the agency in February, 1989 about gaining custody of the child the agency initiated contact with Florida authorities to investigate the grandparents for placement with them, these authorities completed such an investigation, and they furnished the Louisiana authorities with a report most favorable to the grandparents. As late as June, 1989 the state agency was pursuing a plan to reunify appellant and her child.
Appellant contends that appellee's conduct was unfair, that she was prejudiced by the change in the agency's position, and that appellee was equitably estopped from seeking the child's adoption.
As to appellee, she gave a perfectly plausible explanation of her change of position. She testified that until March, 1989 she had the impression that appellant was a good person who had made this one mistake which put her in jail. But at the March hearing she learned about appellant's background and felt compelled to seek adoption to protect the child. As to the agency, a social worker testified that they were pursuing the reunification plan because they thought federal law required this for the first eighteen months they were involved in the case. But they were subsequently advised by their attorney that they were allowed to pursue a plan to allow the foster mother to keep the child and they did so.
These circumstances provide an adequate explanation for the conduct of appellee and the agency and they dispel the notion of bad faith on their part. The record does not support a conclusion that these circumstances *619 prejudiced appellant. By the time of trial the intentions of appellee and the agency were crystal clear. Appellant did not ask for a continuance on this basis and does not suggest how she was handicapped in defending against the suit because of these circumstances. We find no merit in these arguments.

Failure of Appellee to meet Burden of Proof
R.S. 9:422.15 provides as follows:
A. Notwithstanding provisions of law to the contrary, an adoption may be granted over the objection of a parent or parents incarcerated in a state or federal penal institution, following conviction of a felony which has not been appealed, or which has been affirmed at least once on appeal, when all of the following exist:
(1) The non-incarcerated parent has executed an act of surrender for adoption of the child pursuant to R.S. 9:401 through 402 or R.S. 9:422; the non-incarcerated parent is deceased; or the non-incarcerated parent's rights have been terminated.
(2) The incarcerated parent has not developed or maintained a significant relationship with the child.
(3) The adoption is manifestly in the best interest of the child. In determining the best interest of a child, the court shall consider the following factors:
(a) The nature of the offense resulting in the incarceration of the parent, including prior criminal activity.
(b) The length of the sentence imposed upon the parent, and the impact of such on the parent's ability to provide a stable, permanent home for the child during the times in the child's life when permanence and stability are important.
(c) Expert testimony concerning the fitness of the adoptive parent or parents and the relationship with the child, the child's relationship with the incarcerated parent, the fitness of the incarcerated parent, and the needs of the child.
(d) Any relevant history of the incarcerated parent, including his or her relationship with the other parent, the child at issue or other children, any history of violence substance abuse, sexual deviance, mental illness, or personality disorder.
(e) The physical, psychological, and emotional needs of the child, considering the child's entire history and age.
B. The incarcerated parent shall be served and cited as in any adoption proceeding, and shall have the right to attend the adoption hearing and to present any relevant evidence.
C. Unless agreed to by the adoptive parent or parents, the incarcerated parent shall not be allowed to see the adoptive parent, or to acquire any identifying information concerning the adoptive parents.
D. The court shall give specific reasons for judgment, should the court grant an adoption over the objection of an incarcerated parent under the provisions of this Section.
Appellant contends that appellee failed to establish the conditions prescribed by (A)(1) and (A)(3)(c). As to A(1) we have already discussed the position of the alleged natural father in this case and have concluded that he does not qualify as a "parent" in whose favor this subparagraph operates. Nor is there any reason to assume that anyone else exists in this case as to whom the subparagraph would be relevant.
As to A(3)(c) there was extensive positive testimony by a recognized expert in the field of child psychology as to the fitness of the adoptive parent, her relationship with the child, and the needs of the child. Appellant is correct in that there is no direct testimony as to the child's relationship with the incarcerated parent and no showing that the expert examined or interviewed the incarcerated parent. But the fact is that there was no relationship between this incarcerated parent and child to be considered. This parent was separated from her child from birth except for three visits at the prison when the mother and child were separated by a glass partition and were relegated to communication by telephone. Although he did not have direct contact with appellant, the expert *620 testified without equivocation (in response to hypothetical questions put to him by counsel and the judge which accurately embodied all of the facts about appellant) that appellant was not a fit parent for the child. We are satisfied that this element was proved by clear and convincing evidence in the manner summarized above.
In any event, the statute does not provide that the adoptive parent must prove each element but rather that all the elements taken together are the factors for the court to consider in determining the best interests. Thus, while there may be some considerations which might be favorable to the incarcerated parent, when, as here, the combination of the factors weighs so heavily in favor of the adoptive parent, the court should conclude that the adoption is indeed in the best interests of the child.

The Trial Court Erroneously Applied the Best Interest of the Child Standard
On several occasions the trial judge indicated that he was following In re J.M.P., 528 So.2d 1002 (La.1988) in this case. At pages 1015-1016 the Supreme Court discusses the best-interest-of-the child standard applicable to that case and the factors to be considered in making that determination including biological versus psychological relationships of a child to the natural parent and adoptive parent respectively. That case involved a voluntary surrender, an adoption, and a subsequent revocation of the adoption pursuant to R.S. 9:422.10 and 422.11. R.S. 9:422.11 provides that a revocation shall not bar a decree of adoption if the decree is in the best interests of the child. R.S. 9:422.15 also requires the trial court to determine the best interests of the child but unlike R.S. 9:422.11 it specifically enumerates the factors the court must consider in making this determination. Appellant contends that the trial court failed to consider these factors and erroneously applied the test employed in J.M.P.
The record does not support this contention. In the trial judge's reasons for judgment, he made specific reference to each factor enumerated in the statute and found that the evidence supported appellee's case. From our own review we find, considering all the evidence and all of the statute's enumerated factors, that appellee proved by clear and convincing evidence that the adoption was in the best interests of the child.
Furthermore, we find no error in the trial court's reliance on the expert testimony concerning the child's relationship with the psychological (adoptive) parent as opposed to her biological parent as discussed in J.M.P. (A)(3)(c) of the statute requires the trial court to consider such testimony and (A)(3)(e) requires the court to consider the psychological and emotional needs of the child considering her history and age. The kind of psychological testing discussed in J.M.P. has a direct bearing upon these factors in R.S. 9:422.15 even though J.M.P. was not concerned with this statute.

Infringement on Appellants Right Against Self Incrimination
When appellant was on the witness stand she was asked about her use of narcotics. She invoked her Fifth Amendment rights but the trial court ordered her to answer the question. She stated that she had occasionally used cocaine in the past. The trial court referred to this testimony in reasons for judgment so that it contributed to the body of evidence he relied upon to decide the case. Appellant argues that the use of the testimony violates her constitutional rights.
This is not a criminal prosecution. It is a civil proceeding, the trial of which was confidential and closed to the public. The question of appellant's use of drugs was relevant to her fitness as a parent (a factor required to be considered by R.S. 9:422.15(A)(3)(c)). Her answer was damaging to her position in this civil suit but it was not taken in violation of the Fifth Amendment's protection against self incrimination in a criminal case.
We have concluded that none of appellant's specifications of error has merit and *621 that the judgment of the trial court is correct. Accordingly, it is affirmed.
AFFIRMED.
PLOTKIN, J., dissents with written reasons.
PLOTKIN, Judge, dissents with written reasons:
The tension in this case involves a balancing of the rights of biological parents against the rights of a foster parent seeking adoption of the subject child.
The majority concludes that the trial court correctly allowed the foster parent to adopt the child pursuant to LSA-R.S. 9:422.15, which authorizes an adoption over the objection of an incarcerated parent, if, and only if, certain conditions exist. The first condition is as follows:
The non-incarcerated parent has executed an act of surrender for adoption of the child pursuant to R.S. 9:401 through 402 or R.S. 9:422; the non-incarcerated parent is deceased; or the non-incarcerated parent's rights have been terminated.
LSA-R.S. 9:422.15(A)(1).
In the instant case, the alleged biological father of the child, one J.L.B., filed a formal acknowledgment of the child, dated June 12, 1989, in the record, admitting his status as the child's father. The record contains numerous other facts to indicate that J.L.B. is in fact the child's father, including testimony to the effect that the mother was living with J.L.B. at the time the child was conceived. Additionally, the mother identified J.L.B. as the father when interviewed by the social case worker shortly after the child's birth in November of 1987. The trial court granted the foster mother's petition for adoption, despite the above facts and despite the fact that unquestionably none of the three conditions set out in LSA-R.S. 9:422.15(A)(1) had been met. The majority affirms.
As acknowledged by the majority, the United States Supreme Court has held that the standard of proof to be applied in cases where the state seeks to terminate parental rights is "clear and convincing." Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). Additionally, the majority correctly notes that a statute which abrogates a parent's fundamental right to family integrity, such as the one at issue here, is subject to strict scrutiny. Carey v. Population Serv. Int'l, 431 U.S. 678, 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977).
Nonetheless, the majority concludes, without any discussion, that the reference in LSA-R.S. 9:422.15 to a "non-incarcerated parent" pertains only to "a legitimate parent or at least to one who was listed on the birth certificate or who made a timely acknowledgment of the child." At 617. In reaching this decision, the majority apparently relied on Collins v. Division of Foster Care, 377 So.2d 1266 (La.App. 4th Cir. 1979). The majority seems to interpret the Collins decision to hold that the word "parent" in a statute involving adoption means only those persons who fit into one of the groups listed in the opinionlegitimate parents or parents who "timely" acknowledge the child. Apparently also, the majority believes that the illegitimate father's acknowledgment in this case was not "timely." Therefore, the majority says, the conditions of the statute have been met.
I read neither the Collins case nor LSA-R.S. 9:422.15 in the same way the majority does. First, the holding in the Collins case applies specifically to a challenged adoption when the mother of an illegitimate child, who had not been acknowledged by his father, signed a voluntary act of surrender. Under the specific provisions of LSA-R.S. 9:404, the voluntary surrender of such a child by the mother "terminates all parental rights except those pertaining to property." The illegitimate father in Collins attacked that provision, claiming it unconstitutionally discriminated against illegitimate fathers. This court upheld the statute against his constitutional attack, saying the statute did not violate the equal protection rights of illegitimate fathers because illegitimate fathers and illegitimate mothers are not "similarly situated." In a footnote, the court stated that an illegitimate father who does not affirmatively indicate his intention to assume the responsibilities which *622 accompany parenthood "never acquires the corresponding parental rights." Id. at 1270. The majority relies on this footnote to hold that the Collins case controls the instant controversy.
I disagree. The controlling statute in the instant case is totally different from the statute in question in the Collins decision. Without even considering the constitutionality of either statute, I have no trouble finding that the adoption in the instant case should not have been granted, because the express conditions of the statute were not proven. Therefore, I would reverse the trial court's decision and remand the case to the trial court.
Under the express terms of LSA-R.S. 9:422(A)(1), before a child can properly be adopted over the objection of an incarcerated parent, the non-incarcerated parent must either have signed a voluntary surrender of the child or be deceased or his parental rights must have terminated. The majority's decision would allow courts to terminate parental rights without any kind of hearing, on the basis of testimony that the parent has not previously shown interest in the child. In my view, that decision results in a violation of the procedural due process rights of the non-incarcerated parent.
Termination of parental rights was summarized as follows in the introduction to Comment, "Involuntary Termination of Parental Rights in Louisiana: Unravelling the Statute," 58 Tu.L.Rev. 1045, 1045 (1984):
Termination of parental rights means the end of all rights that a parent has in his or her own child. Upon termination, a parent irrevocably surrenders his interest in the maintenance and custody of the child. The permanency and completeness of termination made it the most severe consequence of a public intrusion into the parent-child relationship. It constitutes a direct interference by the state with the family's constitutionally protected right to raise their children in a manner freely chosen. It also has profound sociological, psychological, and legal effects on the children involved.
A parent's interest in his child is considered by the United States Supreme Court as a "basic right of man." Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942). A corollary to that right is the family's right to freedom from unnecessary intrusion by the government. Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 845, 97 S.Ct. 2094, 2110, 53 L.Ed.2d 14 (1977). For that reason, freedom of choice in family matters is considered a fundamental liberty protected by the due process clause of the Fourteenth Amendment to the United States Constitution. Id. Procedural due process requires some type of hearing prior to any action which implicates a protected interest. Board of Regents v. Roth, 408 U.S. 564, 569-70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); Haughton Elevator Division v. State, 367 So.2d 1161, 1165 (La.1979).
Two Louisiana statutes provide for formal, judicial adjudications which result in termination of parental rights. LSA-R.S. 9:403-404 and LSA-R.S. 13:1601. LSA-R.S. 13:1601 provides for termination of parental rights over abused and neglected children; therefore, it would not apply in this case. However, LSA-R.S. 9:403 provides the procedure for declaring a child abandoned, the result of which is termination of parental rights under LSA-R.S. 9:404. LSA-R.S. 9:403 provides, in pertinent part, as follows:
A. A child shall be considered abandoned when clear and convincing evidence is introduced at a judicial proceeding to prove either:
(1)(a) the child has been deserted for a period of at least four months by his parent or parents, the whereabouts of his parent or parents are unknown, the parent or parents have made no provision for the child's care and support and have shown an intention to avoid parental responsibility; or
(b) the parent or parents have failed to provide for the care and support of the child for a period of at least four months under circumstances showing an intention *623 to permanently avoid parental responsibility.
The evidence presented in this case indicates that the state had sufficient cause to file a proceeding to terminate the illegitimate father's parental rights under the above statute. However, in the absence of a judicial termination of his parental rights, the adoption by the foster mother should not be allowed. The illegitimate father is entitled to a hearing under the provisions of LSA-R.S. 9:403. Only after his rights are properly terminated, can the adoption go through under the provisions of LSA-R.S. 9:422.15.
Accordingly, I would reverse the granting of the adoption and remand to the trial court for further proceedings concerning termination of the illegitimate father's parental rights.