540 So.2d 461 (1989)
FIDELITY BANK AND TRUST COMPANY
v.
James H. HAMMONS.
No. 87 CA 1832.
Court of Appeal of Louisiana, First Circuit.
February 28, 1989.
Rehearing Denied April 19, 1989.
Writ Denied June 2, 1989.
*462 Sidney J. Abdalla, Jr., Slidell, for appellee, plaintiff.
H.P. Rowley, III, Covington, for appellant, defendant.
Before CARTER, LANIER and LeBLANC, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment on a promissory note and chattel mortgage.

FACTS
On March 4, 1986, Fidelity Bank and Trust Company (Fidelity) filed a petition for executory process against James H. Hammons. In its petition, Fidelity alleged that it was a holder of a promissory note executed by Hammons, dated March 7, 1985, and that the note was secured by a chattel mortgage on a 1964 Cessna airplane. The airplane was thereafter seized on March 7, 1986.
On March 13, 1986, Hammons obtained a temporary restraining order and filed a petition to enjoin the sale of the airplane, alleging that Fidelity was not entitled to proceed by executory process because of the lack of certain authentic evidence. Fidelity subsequently converted its petition to proceed by ordinary process.[1] Hammons then answered Fidelity's petition, denying the allegations contained therein and alleging improper acceleration, failure to rebate, and novation, and filed a reconventional demand against Fidelity as follows:
7. Plaintiff has violated the Truth in Lending Act by:
(a) Not disclosing to Defendant that the waiver of exemptions from seizure was a security interest,
(b) Making vague, ambiguous and incomplete disclosures about the delinquency charges imposed in the event of partial payment by Defendant;
(c) Not making other disclosures which will be proved at trial.
8. As a result of Plaintiff's violation of the Truth in Lending Act, Defendant has sustained damages in the amount of $1,000.
9. The seizure of Defendant's airplane by Plaintiff in the executory proceeding was wrongful, was a breach of the contract between Plaintiff and Defendant, and was an unfair and deceptive act and practice.
10. As a result of the acts referred to in Paragraph 9, Defendant has sustained damages in the amount of $2,000 for embarrassment, inconvenience and mental anguish, and Defendant retained an attorney to arrest the seizure and sale of the property.
11. Plaintiff's conversion of the executory proceeding to an ordinary proceeding after Defendant's airplane had been seized, after Defendant had obtained a *463 temporary restraining order which arrested the seizure and sale of the airplane, and after a motion for preliminary injunction was set for hearing later on the same day was an abuse of process and an unfair trade practice because the ulterior motive of Plaintiff was to avoid paying damages and attorney's fees to Defendant.
12. As a result of the acts referred to in Paragraph 11, Defendant has sustained damages in the amount of $1,000 for embarrassment, inconvenience and mental anguish.
After trial, the trial judge rendered judgment on the main demand in favor of Fidelity for $5,394.38, together with per diem interest of $2.48 after March 7, 1986, awarded Fidelity attorney's fees of 25% of the amount due, and cast Hammons for all costs, dismissing Hammons' reconventional demands.
From this adverse judgment, Hammons appeals, assigning the following errors:
1. The city [court] erred and abused its discretion by refusing to award damages and attorney fees to Hammons for wrongful seizure of the airplane.
2. The city court erred and abused its discretion by finding that Hammons did not suffer any compensable damage as a result of the wrongful seizure of the airplane.
3. The city court erred and abused its discretion by dismissing Hammons' reconventional demands.
4. The city court erred and abused its discretion by dismissing Hammons' affirmative defenses.

DAMAGES FOR WRONGFUL SEIZURE
LSA-C.C.P. art. 2751 provides:
The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed.
In the event injunctive relief is granted to the defendant, if the court finds the seizure in the executory proceeding to be wrongful, it may allow damages to the defendant. Attorney's fees for the services rendered in connection with the injunction may be included as an element of the damages.
Comment (f) to this article indicates that when the second paragraph of LSA-C.C.P. art. 2751 was enacted in 1981, it was intended to give the trial judge the discretion to award damages and attorney's fees where the seizure through executory process was wrongful. As the comment notes, the statute was not intended to require that damages and attorney's fees be awarded in every case where an injunction is issued. For example, where an injunction is issued because of a technical deficiency or a technical error, a trial court may determine that an award of damages and attorney's fees is not proper.
Generally, the burden of proving damage suffered is upon the party claiming damages. See Borden, Inc. v. Howard Trucking Company, Inc., on rehearing, 454 So.2d 1081 (La.1984). In cases where it is established that a party requesting damages has suffered some damages as a result of a loss, though the amount is not definitely ascertainable, the court must fix the amount of damages as best it can, and in this connection the trial judge is vested with much discretion. Hyorth v. Louisiana Department of Corrections, 460 So.2d 22 (La.App. 1st Cir.1984). Moreover, in the absence of proof of actual damages, the court may make an award of nominal damages. See Hyorth v. Louisiana Department of Corrections, supra.
In the instant case, the trial judge exercised the discretion afforded him in LSA-C.C.P. art. 2751 and declined to award damages and attorney's fees. In his reasons for judgment, the trial judge stated:
While the pleadings and the memorandum of defendant called for damages suffered by the defendant as a result of the seizure, there was no testimony adduced at the trial which would indicate that Mr. Hammons did, in fact, ever suffer any compensable damage as a result *464 of the seizure. The seizure was in fact terminated.
Hammons did not testify as to the amount of attorney's fees or any other expenses incurred in connection with the petition for injunction. Hammons introduced a letter from his attorney specifying the agreement between Hammons and his attorney with regards to compensation. The letter sets forth an hourly fee of $100.00 along with an assignment of all rights against Fidelity for attorney's fees. However, there is no evidence of the amount of time Hammons spent in obtaining the temporary restraining order.
Further, while Hammons testified that the seizure elevated his blood pressure and caused headaches, lack of appetite, and embarrassment and inconvenience, Hammons stated:
Q. Did this seizure of the aircraft inconvenience you in any way?
A. It did.
Q. How did it inconvenience you?
A. Well, I lost some work. Things I had planned to do that, you know, I had to stop what I was doing then and take care of this.
Q. You didn't lose any money?
A. No, I did not.
After carefully reviewing the entire record, we cannot say that the trial judge abused his discretion in failing to award Hammons damages for wrongful seizure. See Fred H. Moran Construction Corporation v. Elnaggar, 441 So.2d 260 (La.App. 1st Cir.1983) and Dawson v. Bonfanti, 430 So.2d 1371 (La.App. 1st Cir.1983).

TRUTH IN LENDING VIOLATIONS
Hammons contends that the precise issue is whether Fidelity violated the Truth in Lending disclosure provisions by not disclosing that the waiver of exemption from seizure was a security interest and by making vague, ambiguous and incomplete disclosures about delinquency charges. Hammons does not explain his contention with any detail, but merely cites this court to Watts v. Key Dodge Sales, Inc., 707 F.2d 847 (5th Cir.1983).
A. Delinquency Charge
In the instant case, the note contains the following provision regarding late charges:
LATE CHARGE: I agree to pay a late charge of 5% of the unpaid amount of an installment which is not paid in full within 10 days of when it is due, up to a maximum of $15.00.
If an installment is not paid within 10 days after it is due, I agree that you may unilaterally grant a deferral and charge for such deferral, instead of the late payment charge provided above, interest on the amount deferred at the contract rate for the period of the deferral.
A careful reading of Watts v. Key Dodge Sales, Inc., supra, reveals that the first paragraph of the instant note regarding late charges closely tracks the provision set forth by the Watts court, which was given as an example of a clear and unambiguous provision which would not violate the Truth in Lending Act. In the present case, the trial judge apparently determined that the delinquency charge provisions in the promissory note clearly provide for the amount and/or method of computation of delinquency charges and that Fidelity had not violated Truth in Lending provisions. We agree.
B. Waiver of Exemptions
We have carefully reviewed the entire record and cannot say that the trial judge erred in refusing to find that Fidelity violated any Truth in Lending provisions with regard to waiver of exemptions. See Cox v. First National Bank of Cincinnati, 751 F.2d 815 (6th Cir.1985).

UNFAIR TRADE PRACTICES
LSA-R.S. 51:1406(1) provides that the provisions of the chapter on unfair trade practices and consumer protection law do not apply to:
(1) Actions or transactions subject to the jurisdiction of the Louisiana Public Service Commission or other public utility regulatory body, the state bank commissioner and the insurance commissioner, and any bank chartered by or under *465 the authority of the United States acting under statutory authority of this state or the United States to regulate unfair or deceptive trade practices.
In Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987), the Louisiana Supreme Court determined that monitoring and collecting a loan are powers incidental to a state bank's express power to loan money and therefore constitute actions subject to the jurisdiction of the Commissioner of Financial Institutions. As such, the provisions of LSA-R.S. 51:1401 et seq. did not apply to the Bank of Coushatta.
In the instant case, Fidelity clearly is an exempted financial institution. As such, the Unfair Trade Practice and Consumer Protection Law is inapplicable to Fidelity under the facts of this case, and the trial judge properly refused to award Hammons damages under these provisions.

ABUSE OF PROCESS
In Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979), the Louisiana Supreme Court explained the doctrine of abuse of rights as follows:
This Court expressly recognized the doctrine of abuse of rights in Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977), and has employed a similar analysis in earlier decisions. Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206 (1919); Onorato v. Maestri, 173 La. 375, 137 So. 67 (1931).
Nevertheless, the doctrine of abuse of rights has been invoked sparingly in Louisiana and we must look to other civilian jurisdictions for its full articulation. The doctrine is the product of a French jurisprudential and doctrinal movement which has expanded into most of the civil law jurisdictions "to the point of becoming a widely accepted principle of the Civil Law." Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965, 967 (1975). See, generally, Catala and Weir, Delict and Torts: A Study in Parallel (Part II), 38 Tul.L. Rev. 221 (1964); Herman, Classical Social Theories and the Doctrine of Abuse of Right, 37 La.L.Rev. 747 (1977); Maynard, Abuse of Rights in France and Quebec, 34 La.L.Rev. 993 (1974); Comment, 7 Tul.L.Rev. 426 (1933). The main body of French case law on abuse of rights is based on article 1382 of the French Civil Code, which is very similar in wording to article 2315 of the Louisiana Civil Code. In its origin, the abuse of rights doctrine was applied to prevent the holder of rights or powers from exercising those rights exclusively for the purpose of harming another, but today most courts in civil law jurisdictions will find an act abusive if the predominant motive for it was to cause harm. See, Cueto-Rua, supra, at 990-91; Catala and Weir, supra at 222-26. The doctrine has been applied where an intent to harm was not proven, if it was shown that there was no serious and legitimate interest in the exercise of the right worthy of judicial protection. See, Cueto-Rua, supra, at 992-96; Catala and Weir, supra, at 230-34. Protection or enforcement of a right has been denied when the exercise of the right is against moral rules, good faith or elementary fairness. See, Cueto-Rua, supra, at 996-99. Another criteria, espoused originally by the French scholar Louis Josserand, would require an examination of the purpose for which the right was granted. If the holder of the right exercised the right for a purpose other than that for which the right was granted, then he may have abused the right. See, Cueto-Rua, supra, at 1000-1003; Catala and Weir, supra, at 1000-1003; Catala and Weir, supra, at 227-29; Herman, supra, at 754-55.
The foregoing principles seem to be the main criteria which have been formulated for applying the abuse of rights doctrine. These tests have met with varying degrees of acceptance in the civil law jurisdictions, and it should be kept in mind that the entire doctrine is in a state of flux. As Professor Cueto-Rua observes:
"* * * The doctrine of abuse of rights is in the making, it is `in fieri.' It is an important juridical-political element of *466 modern civil law doctrine. Although there are still pending important questions concerning its scope as well as criteria for the definition of abusive use of rights, this we may safely say now: it will be difficult for a holder of an individual right, in most of the civil law jurisdictions today, to exercise such right to the detriment of other parties, just for the sheer sake of exercising it. At least a `serious and legitimate interest' will have to be shown in order to justify the exercise of its right." [368 So.2d at 1013-1014]
After evaluating the conduct of the parties in the instant case under the jurisprudential and doctrinal tests, we find that Fidelity's attempted judicial enforcement of the promissory note by executory process, though improper because of lack of authentic evidence, does not constitute an abuse of right. Fidelity did not seek to enforce the note via executory process with the intent of harming Hammons. The intent of Fidelity was to enforce the obligations by seizing and selling the security for the debt. The trial judge properly refused to award Hammons damages for abuse of right.

TORTIOUS BREACH OF CONTRACT
In Broussard v. Northcott Exploration Company, Inc., 481 So.2d 125 (La.1986), the Louisiana Supreme Court stated:
Article 2315 provides in part: "every act whatever of an (sic) that causes damage to another obliges him by whose fault it happened to repair it." Fault is a breach of duty owed by one party to another under the particular facts and circumstances of a given case. It encompasses the exercise of contractual rights in such a manner as to cause unreasonable property damage. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); and Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). As stated by this court long ago, "every business, however lawful, must be conducted with due regard for the rights of others ..." Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947). [481 So.2d at 128].
In the instant case, when Fidelity exercised its rights under the promissory note and chattel mortgage, it had an obligation to act reasonably. Assuming arguendo that Fidelity acted unreasonably in filing the petition for executory process, the trial judge determined, and we agree, that Hammons failed to establish that he suffered any damage as a result of such alleged tortious breach of contract.

AFFIRMATIVE DEFENSES
Hammons contends that the trial court erred in dismissing his affirmative defenses. Hammons reasons that the note was improperly accelerated, that Fidelity failed to make the appropriate rebates under LSA-R.S. 9:3527, and that Fidelity failed to properly put him in default prior to institution of suit.
In the instant case, Johnny Crow, formerly a loan officer and presently president of Fidelity, testified that Hammons note was in default since November of 1985, that Hammons was notified of the default by letter dated February 18, 1986, that all rebates had been properly credited to Hammons account, and that the balance due was $5,394.38. A copy of the letter of default made by Fidelity's attorney was introduced into evidence. Hammons introduced no evidence to controvert this testimony.
After carefully reviewing the entire record, we find that the trial judge properly rendered judgment awarding Fidelity $5,394.38, together with per diem interest of $2.48 after March 7, 1986, with attorney's fees of 25% plus all costs.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Hammons is cast for all costs.
AFFIRMED.
LANIER, J., concurs.
NOTES
[1] The writ of seizure was subsequently dismissed.