693 So.2d 349 (1997)
SCHWEGMANN BANK AND TRUST COMPANY
v.
Stephen Lewis DUNNE, Charlotte Gwendolyn Robinson Dunne, and Hackett & Dunne, a partnership.
No. 96-CA-2410.
Court of Appeal of Louisiana, Fourth Circuit.
April 30, 1997.
Rehearing Denied May 15, 1997.
*350 James E. Uschold, New Orleans, for Appellants.
Robert A. Mathis, Newman, Mathis, Brady, Wakefield & Spedale, Metairie, for Appellee.
Before LOBRANO, PLOTKIN and WALTZER, JJ.
LOBRANO, Judge.
Schwegmann Bank and Trust Company (Schwegmann) obtained summary judgment on its claim for a deficiency judgment against Mr. and Mrs. Dunne, appellants herein. The Dunnes appeal asserting that there are genuine issues of material fact with respect to the application of the various affirmative defenses they have asserted, any one of which they claim should defeat summary judgment. For the following reasons, we affirm in part and reverse in part.
The Dunnes executed a collateral mortgage and note in the amount of $265,000.00 secured by immovable property located at 862 Camp Street in the City of New Orleans. That mortgage and note were pledged to secure a loan from Schwegmann in the amount of $235,000.00 represented by a note dated November 18, 1993 (the hand note). According to the recitation of facts by both parties, the encumbered property was sold sometime in early 1994 to the law partnership of Hackett and Dunne. The partnership assumed the mortgage. Apparently the law partnership dissolved in June of 1994, and Robert L. Hackett continued the payments until April of 1995.
According to Schwegmann, the loan went in default on April 18, 1995, and a demand was made on the Dunnes on June 15, 1995. Suit for executory process was filed in July of 1995 and the property was eventually sold *351 at sheriff's sale, with appraisement, on January 11, 1996 to James Daly for $240,000.00. After deducting the sheriff's costs and expenses of the sale, Schwegmann received, on April 23, 1996, the sum of $219,850.22, plus an additional sum of $1,700 from Daly because of his tardiness in paying the full sum.
In August of 1996 Schwegmann amended its petition to seek the deficiency that is the subject of the litigation now before us. In response to that demand, the Dunnes filed an answer which set the forth the affirmative defenses that Schwegmann breached a fiduciary relationship it had with the Dunnes, that it (Schwegmann) had settled or compromised their claim, and that Schwegmann abused its rights by going forward with the sheriff's sale and not a private sale. The trial judge granted Schwegmann's motion for summary judgment and rendered judgment against the Dunnes for the balance due on the hand note ($225,503.15), interest through June 15, 1995 ($5,523.11), interest from June 16, 1995 through April 23, 1996 ($34,807.98), plus interest at 18% from April 24, 1996 until paid, plus 25% attorney fees, subject to a credit for the amount received by Schwegmann from the Sheriff.
The focus of this appeal is on the events which took place between the time the property was seized, July 1995, and then subsequently sold at sheriff's sale, January 1996. In opposition to Schwegmann's motion the Dunnes presented their affidavits wherein they essentially state that Schwegmann's attorney, Robert Mathis, called them in October of 1995 to advise them that Mr. Daly had made an offer to purchase the property. Affiants further stated that Mathis told them he would need their authorization for the transaction and that the purchase by Daly would terminate all the legal proceedings against them. The Dunnes received correspondence from Mathis dated October 12, 1995 which requested that they sign the letter that was enclosed and return it to Mathis. The letter which was enclosed, also dated October 12th, provides as follows:
Dear Sir:
We, the undersigned, pledgors of that certain collateral mortgage note payable to the order of Bearer in the amount of $265,000.00, dated November 18, 1993 and executed by Stephen Lewis Dunne and Charlotte Gwendolyn Robinson Dunne (the "collateral mortgage note"), do hereby approve of a transaction whereby that certain promissory note in the amount of $235,000.00 dated November 18, 1993, payable to the order of Schwegmann Bank & Trust Company, and executed by Stephen Lewis Dunne and Charlotte Gwendolyn Robinson Dunne (the "hand note"), is paid off in cash.
In connection with payoff of the loan, the bank is authorized to mark the hand note and the collateral mortgage note "paid" and present the paid collateral mortgage note to the appropriate public records officer for cancellation and release of the collateral mortgage securing same and which has been foreclosed in connection with the above-captioned matter.
Based on the above letter and their personal affidavits, the Dunnes argue that issues of fact remain as to whether the letter evidences: (1) a settlement or compromise subject to the suspensive condition of the sale to Daly; or (2) created a new credit agreement, or (3) created a fiduciary or agency relationship which Schwegmann breached by not going forward with the sale to Daly. In addition, the Dunnes assert abuse of rights as a defense arguing that, although Schwegmann had a right to foreclose, that right was abused by not completing the private sale to Daly. Finally, the Dunnes question the correctness of the interest calculations and the award of attorney fees.
The trial judge found that the letter did not evidence anything other than a failed attempt by the parties to settle the matter without going to a sheriff's sale and that it did not meet the requirements of La. R.S. 6:1124 so as to create a fiduciary relationship. Schwegmann agrees and argues that the letter merely requests authorization from the Dunnes to cancel the collateral mortgage and note on the public records "in connection with the payoff of the loan." Schwegmann asserts this was necessary because technically the Dunnes are the owners of the pledged instrument, i.e. the collateral mortgage and note, and the Civil Code requires the return *352 of a pledged item to the owner/pledgor. See, La. C.C. art. 3164.
Initially, we make two observations. First, the Dunnes admit that they executed all of the instruments evidencing the debt to Schwegmann including the mortgage on the Camp street property. Furthermore, they do not deny that the loan was in default at the time of foreclosure, albeit they contest the interest computation and attorney fee award. Thus, they bore the burden of establishing any and all defenses, La. R.S. 10:3-308(b), which leads to the second observation. The Dunnes filed no reconventional demands seeking damages or set offs for the alleged wrongdoings by Schwegmann. They only assert their various claims as defenses to the claim for a deficiency. Thus, we must first consider which of those defenses are allowed against the holder of a note and which are more properly asserted via a reconventional demand. See, American Bank v. Saxena, 553 So.2d 836 (La.1989).
Louisiana Revised Statute 10:3-305 provides for the defenses available against a holder and a holder in due course of an instrument.[1] Because Schwegmann has not argued nor asserted its status as a holder in due course, we conclude that the defenses set forth in section (a)(2) are applicable.[2] That section provides that the obligee's right to enforce an obligation on an instrument is subject to "... a defense of the obligor that would be available if the person entitled to enforce the instrument were enforcing a right to payment under a simple contract[.]" In Saxena, supra, the court interpreted that language to mean that the defenses must relate to whatever contract exists between the obligor and obligee. In that case, the only contracts were the promissory notes given to the bank in evidence of the loans, and thus the debtor's defenses had nothing to do with those contracts. Similar reasoning is applicable to the Dunnes' claim of breach of fiduciary or agency duty. Assuming arguendo that a court could determine after trial on the merits that the October 12th letter and the related conversations with Mathis created an agency relationship between Dunne and Schwegmann, that finding would have no bearing on the Dunnes' liability on the note. The agency or fiduciary relationship allegedly arose over two years after the loan was made. The subsequent breach of that relationship has no connexity with the confection of the note.[3] This argument has no merit.
However, with respect to the Dunnes' interpretation that the letter constitutes a compromise, the above reasoning is not applicable. Compromise can be a valid defense to a suit to enforce a contract. See, La. C.C. arts. 3071, 3073 and 3078. The law requires that the compromise be reduced to writing and that its scope be limited to the differences comprehended by the parties. La. C.C. 3071, 3073. For two reasons, we reject the Dunnes' argument on this issue. First, by their own admission, if there was a compromise, it was subject to a suspensive condition, i.e. the sale to Daly. That did not occur and thus the alleged compromise did not occur. Second, and more important, giving every benefit of the doubt to the Dunnes' position, we simply cannot interpret the October 12th document as a compromise of anything. It merely evidences their assent to the obligation being paid and the mortgage and note being cancelled on the public records.
The third interpretation asserted by the Dunnes is that the letter evidences a new credit agreement. Louisiana Revised Statute 6:1122 provides that a "debtor shall not *353 maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." (Emphasis added) The first observation we make is that the Dunnes are not maintaining an action but are asserting the "new" credit agreement by way of a defense. That distinction, says the Dunnes, is the reason why the provisions of La.R.S. 6:1122 need not be strictly adhered to. It is noted that Schwegmann did not sign the October 12th letter, nor does the letter set forth any additional terms and conditions pertaining to the Dunnes' loan. However, the Dunnes argue that the letter and their affidavits raise material issues requiring a trial. We disagree.
We first conclude that the distinction noted by the Dunnes is one that makes no difference. It would make no sense to say that a debtor cannot maintain a claim based on an oral credit agreement, but at the same time conclude that an oral agreement could be used to defeat collection attempts by a creditor. In this case, the letter simply does not meet the requirements of La. R.S. 6:1122 so as to constitute a new credit agreement. However, again assuming arguendo that it does satisfy the statute, it still cannot be considered a "new" credit agreement because of the provisions of La. R.S. 6:1123. That statute provides, in pertinent part, that the agreement of a creditor "to take or not to take certain actions, such as ... forbearing from exercising remedies under a prior credit agreement, or extending installments due under a prior credit agreement" shall not give rise to a claim that a new credit agreement is created. Here, the Dunnes claim that a trial on the merits would show that Schwegmann represented that it would complete the sale to Daly, that it did not do so, and thus it did not delay the sheriff's sale. If in fact Schwegmann did agree to delay the sheriff's sale to attempt a private sale, that is nothing more than an agreement to forbear from exercising remedies acquired when the collateral mortgage was pledged, and does not constitute a new credit agreement. La. R.S. 6:1123 A(3).
Next, the Dunnes assert a defense of abuse of rights. Abuse of rights is a tort doctrine that has been used sparingly in Louisiana. Oliver v. Central Bank, 26,932 (La. App. 2 Cir. 5/10/95), 658 So.2d 1316, writ denied, 95-1469 (La.9/22/95), 660 So.2d 477, and the cases cited therein. "The doctrine is a civilian concept which is applied only in limited circumstances because its application renders unenforceable one's otherwise judicially protected rights." Id. at p.7, 658 So.2d at p. 1321. Normally the doctrine is asserted as the basis for a damage claim. However, in the instant case, the Dunnes assert it as a defense to their liability on the note. We are unable to find where that doctrine has ever been asserted as a defense to a suit on a promissory note[4], although it has frequently been utilized in landlord-tenant cases. Owens and Sons, Inc. v. Casey, 94-2580 (La. App. 4 Cir.7/26/95), 659 So.2d 541, writ denied, 95-2170 (La.11/17/95), 663 So.2d 711, and the cases cited therein. However, as we noted in Capone v. Kenny, 94-0888 (La.App. 4 Cir. 11/30/94), 646 So.2d 510, we know of no cases where the tenant has been successful in asserting that defense. Regardless, for the following reasons, we hold that the defense of abuse of rights will not defeat summary judgment in this case.
The main demand filed by Schwegmann is a claim for the deficiency due on a promissory note admittedly executed by the Dunnes for valuable consideration. Assuming as true the Dunnes' assertion that Schwegmann abused its rights by proceeding to a sheriff's sale rather than a private one, that fact does not nullify or void their obligation on the note. It may give rise to a claim for set off or damages, but it does not relieve them of their obligation to pay the note. Furthermore, interposition of the abuse of rights defense as a set off will not defeat summary judgment because the main demand is liquidated, while the abuse of rights claim is unliquidated. American Bank v. Saxena, supra. Compensation takes *354 place between two persons only for liquidated obligations. La. C.C. art. 1893. In sum, we hold that the defense of abuse of rights, even if proven at a trial on the merits, will not void the debtors' obligation to pay a note they admit is due and owing.
Finally, the Dunnes argue that the trial court's computation of interest is incorrect, or at least not appropriate for summary judgment, and that the award of 25% attorney fees is excessive. Schwegmann pleaded that the note was in default as of June 15, 1995. Interest up to that time was computed at 10%, the amount stipulated in the note. Subsequent to that date interest was computed at the post default rate of 18%. The Dunnes complain that there is nothing in the record to evidence the date of default as being June 15, 1995. They also argue that post default interest should be computed to the day of the sheriff's sale, January 11, 1996, rather than April 23, 1996, the date Schwegmann received the funds from the sheriff. We find no merit in either argument simply because the affidavit of Frederic Cantrelle, Schwegmann's vice president, states that interest was computed for those time periods, and obviously at the 10 and 18 percent rates. The Dunnes offered no countervailing affidavits or other evidence to suggest those computations are incorrect. In instances such as this, the party opposing a motion for summary judgment cannot rest on the mere allegations of his pleading. La. C.C. Pro. art. 967. We find no merit in this argument.
We do find merit, however, in the claim that the award of 25% attorney fees was inappropriate for summary judgment. Even though Civil Code article 2000 permits contractual attorney fees, the courts have consistently recognized the right of judicial review for excessiveness. Brandner v. New Orleans Office Supply Center, Inc. 94-2534 (La.App. 4th Cir. 4/26/95), 654 So.2d 858, writ denied, 95-1298 (La.6/30/95), 657 So.2d 1039. This matter is before us on a summary judgment, and the record is barren of any evidence, other than the contractual stipulation of 25%, to support that amount.
For the reasons assigned, the summary judgment in favor of Schwegmann is affirmed in all respects except for the award of attorney fees. That award is reversed and the matter is remanded for a hearing on the claim of excessiveness.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting.
I respectfully dissent from the majority's determination that the affidavits do not raise any material issues that require a trial. Although I concur in the majority's determination that the telephone conversation between creditor and debtor and subsequent letter from creditor to debtor do not suffice to establish either a valid compromise or credit agreement, I believe (1) that the affidavits establish at least a genuine issue of material fact as to whether this transaction was conducted in accordance with the overarching obligation that all conventional obligations be performed in good faith and (2) that this transaction requires the greater scrutiny that will be afforded by trial.
Stephen Dunne asserted in his affidavit that a representative of the creditor informed him by telephone conversation that Mr. James Daly offered to purchase the encumbered property at a price sufficient to eliminate Dunne's indebtedness. Although the creditor denies generally that the bank assumed any responsibility in this conversation, the creditor has not at this time denied the debtor's version of the conversation or provided anyone with personal knowledge to refute the debtor's claims. Dunne executed a document approving this transaction at the creditor's request. Dunne also asserted in his affidavit that Daly contacted him and confirmed that Daly and the creditor were in agreement as to the price but that the creditor had failed to obtain a warranty of title from Dunne. Daly confirms the debtor's claims. The encumbered property was subsequently sold at sheriff's auction on January 11, 1996, for $241,700 to James Daly, which was less than the price Dunne alleged was originally offered.
*355 Equitable estoppel is defined as the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance. Quality Finance Co. v. Mitchell, 423 So.2d 1262, 1265 (La.App. 1st Cir.1982). There are three elements of estoppel: (1) a representation by conduct or word; (2) justifiable reliance; and, (3) a change in position to one's detriment because of the reliance. Wilkinson v. Wilkinson, 323 So.2d 120, 126 (La.1975). A party may not invoke equitable estoppel except in good faith and after having exercised such diligence as would reasonably be expected under the prevailing circumstances to avoid mistake or misunderstanding. Quality Finance Co., supra at 1266.
Based on the affidavits offered by each party in support and opposition to the motion for summary judgment, I would reverse the granting of the motion in its entirety at this time. Although the debtor may ultimately be held liable for any deficiency, I believe this debtor has raised sufficient allegations, which are uncontroverted by the creditor, to require trial on the merits to determine whether the creditor should be estopped from recovering the deficiency from the debtor.
NOTES
[1] Although in the petition for executory process Schwegmann alleged it was a holder in due course, Schwegmann has not argued that status either in its motion for summary judgment or in defense of this appeal.
[2] Section (a)(3) provides that a claim of recoupment by the obligor can be asserted against the payee of the instrument. However, such a claim is only applicable if the recoupment claim arose out of the transaction that gave rise to the instrument. In the instant case, the Dunnes defenses arose subsequent to the loan by Schwegmann and have nothing to do with that transaction.
[3] Thus, we need not address the argument that the letter satisfies La.R.S. 6:1124 which requires that a fiduciary or agency relationship between a financial institution and its customer be in writing.
[4] In Fidelity Bank and Trust v. Hammons, 540 So.2d 461 (La.App. 1st Cir.1989), writ denied, 544 So.2d 402 (La.1989), defendant unsuccessfully asserted abuse of rights in a reconventional demand filed in response to a foreclosure proceeding via ordinaria.