812 So.2d 695 (2002)
LAKELAND ANESTHESIA, INC. Individually, and on Behalf of Others Similarly Situated
v.
CIGNA HEALTHCARE OF LOUISIANA, INC.
No. 2001-CA-1059.
Court of Appeal of Louisiana, Fourth Circuit.
February 6, 2002.
*696 Andrew A. Lemmon, Donna M. Bossier, Lemmon Law Firm, New Orleans, LA, and Paul A. Lea, Jr., Covington, LA, and Joe R. Whatley, Jr., Whatley Drake, L.L.C., Birmingham, AL, Counsel for Plaintiff/Appellee.
Brian D. Boyle, O'Melveny & Myers, L.L.P., Washington, DC, and Charles R. Penot, Jr., B. Franklin Martin, III, McGlinchey Stafford and Normand F. Pizza, Milling Benson & Woodward, L.L.P., New Orleans, LA, Counsel For Defendant/Appellant, CIGNA HealthCare of Louisiana, Inc.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge STEVEN R. PLOTKIN, Judge TERRI F. LOVE.
PLOTKIN, Judge.
Defendant, CIGNA HealthCare of Louisiana, Inc., appeals a trial court judgment partially denying its exception of prematurity and alternative motion for a stay pending arbitration based on its contention that all claims asserted by plaintiffs, Anesthesia East, Inc. and Lakeland Anesthesia, Inc., are subject to a contractual mandatory arbitration provision. CIGNA claims that the trial court improperly failed to dismiss all of the claims asserted by Anesthesia East and Lakeland Anesthesia. We affirm.

*697 Facts
Plaintiffs, Lakeland Anesthesia and Anesthesia East, two groups of independent anesthesiologists, filed suit against defendant, CIGNA HealthCare, alleging that CIGNA HealthCare failed to make timely payments for healthcare services they rendered to CIGNA HealthCare insureds. According to the "Group Practice Managed Care Agreement" between CIGNA HealthCare and Anesthesia East, CIGNA HealthCare "contracts directly or indirectly with Payors, employers, individuals, insurers, sponsors and others, to provide, insure, arrange for and administer the provision of health care services." CIGNA HealthCare also "contracts with physicians, hospitals and other health care practitioners and entities, to provide, arrange for or administer, at predetermined rates, the delivery of such health care services."
Anesthesia East seeks payment of claims under the provisions of its aforementioned "Group Practice Managed Care Agreement" with CIGNA HealthCare. However, Lakeland Anesthesia is not a signatory to any agreement with CIGNA HealthCare. Thus, Lakeland Anesthesia seeks payment for services under the provisions of an agreement between CIGNA HealthCare and Columbia/HCA. Lakeland Anesthesia claims that it provided health care services to CIGNA HealthCare insureds at Columbia/HCA.
CIGNA HealthCare filed an exception of prematurity and motion for stay pending arbitration. The trial court granted the exception "with respect to claims arising under that certain contract between Anesthesia East, Inc. and CIGNA HealthCare of Louisiana, Inc. entitled `Group Practice Managed Care Agreement' that has an effective date of September 1, 1999," based on an arbitration provision found in that agreement. Those claims were dismissed by the trial court without prejudice. However, the trial court denied the exception and the motion to stay regarding all claims asserted by Anesthesia East other than those arising under the agreement executed on September 1, 1999. The trial court also denied the exception and motion to stay regarding all claims asserted by Lakeland Anesthesia, apparently because Lakeland Anesthesia was not a signatory to any agreement containing an arbitration clause. CIGNA HealthCare appeals.[1]

Standard of review
This court most recently described the proper standard of review for a trial court decision based on interpretation of a contract in Bartlett Construction Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94, writ denied, 2000-2322 (La.11/03/00), 773 So.2d 142, as follows:
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Orleans Parish School Board v. City of New Orleans, 96-2664 (La.App. 4 Cir. 9/3/97), 700 So.2d 870. "In the interpretation of contracts, the trial court's interpretation of the contract is a finding of fact subject to the manifest error rule." Grabert v. Greco, 95-1781, (La.App. 4 Cir. 2/29/96), 670 So.2d 571, 573. In applying the manifest error rule to the trial court's interpretation, the Court of Appeal may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Syrie v. Schilhab, 96-1027, *698 (La.5/20/97), 693 So.2d 1173. In such cases, appellate review of questions of law is simply to determine whether the trial court was legally correct.
Id. at 4-5, 763 So.2d at 97-98. Because we find no ambiguity in the arbitration clause at issue in the instant case, we will simply determine whether the trial court was legally correct in partially denying CIGNA HealthCare's exception and alternative motion to stay.

Arbitration principles
The Louisiana Arbitration Law ("LAL") is virtually identical to the United States Arbitration Act, 9 U.S.C. §§ 1. 14; thus, Louisiana courts look to federal law in interpreting the LAL. Blount v. Smith Barney Shearson, Inc., 96-0207, p. 5 (La. App. 4 Cir. 2/12/97), 695 So.2d 1001, 1003. Citing the Steelworkers' Trilogy,[2] the United States Supreme Court in AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) established four "precepts" for determining whether a given dispute must be submitted to arbitration. Only the first and fourth of those precepts are pertinent to this case. The first precept is that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 475 So.2d at 648, quoting Schneider Moving & Storage Co. v. Robbins, 466 U.S. 364, 371-372, 104 S.Ct. 1844, 80 L.Ed.2d 366 (1984). The fourth precept is that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that `[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. at 650.

Claims asserted by Anesthesia East
The contractual relationship between CIGNA HealthCare and Anesthesia East goes back to 1991. Prior to September 1, 1999, all of the contracts between Anesthesia East and CIGNA HealthCare contained the following "Dispute Resolution" provision:
The parties shall resolve complaints or grievances arising between the parties or the parties and Payor or the parties and Participants in accordance with the dispute resolution procedures described in the applicable Program Requirements.
However, the renewal contract between the CIGNA HealthCare and Anesthesia East, signed on September 1, 1999 and valid when the instant suit was filed, contains the following "Dispute Resolution" provision:
1. The parties shall first attempt to resolve any disputes that may arise between the parties in accordance with the dispute resolution procedures in applicable Program Requirements.
2. Should the dispute not be resolved through the aforementioned process, the parties shall refer the dispute, controversy or question arising under this Agreement to an arbitrator selected by the parties.
Preliminarily, we note the existence of a distinction between the language used by the trial judge, who referred to "claims" arising under the September 1, 1999 agreement, and the language of the agreement *699 itself, which refers to "dispute[s], controvers[ies], or question[s]." CIGNA HealthCare's attorney asserted during oral argument to this court that a "claim" is different from a "dispute," implying that the trial court judgment is suspect because of its use of that term. However, we believe that the distinction is purely semantic, and that the word used by the trial judge"claim"is broad enough to cover the three matters referred to in the agreement disputes, controversies, and questions. Accordingly, we find no merit in CIGNA HealthCare's arguments based on this semantic issue. Instead, we will focus on the precepts established by AT & T Technologies for determining whether a given dispute must be submitted to arbitration.
The first precept established by AT & T Technologies is that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 475 So.2d at 648. Anesthesia East unquestionably agreed to submit disputes, controversies and questions arising under the agreement executed on September 1, 1999, to an arbitrator, anytime the matter has not been resolved through the dispute resolution procedures contained in that agreement. However, the more pertinent inquiry determining whether the controverted claims must be submitted to arbitration is the fourth precept established by AT & T Technologiesi.e., "`[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. at 650, 106 S.Ct. 1415. In brief, CIGNA HealthCare focuses its argument on this precept, arguing that the arbitration clause in the September 1, 1999 agreement should apply to all of the disputes raised by Anesthesia East, even those that arose prior to the execution date of the agreement, because "[d]oubts should be resolved in favor of coverage." Id. at 650, 106 S.Ct. 1415.
However, the court in Security Watch, Inc. v. Sentinel Systems, Inc., 176 F.3d 369 (1999), cert. denied sub nom, AT & T v. Security Watch, Inc., 528 U.S. 1181, 120 S.Ct. 1220, 145 L.Ed.2d 1120 (2000), considered essentially the same question presented by the instant appeal. In that case, the court quoted the following pertinent portion of the alternate dispute resolution ["ADR"] provision in the contract: "The parties shall follow these dispute resolution processes in connection with all disputes, controversies or claims ... arising out of or relating to the Products furnished pursuant to this Agreement or acts or omissions of Distributor or A T & T under this Agreement." Id. at 372. The above provision was contained in the 1994 agreement between the parties, but not in previous agreements. The court found as follows: "The `Agreement' referred to in this paragraph is the 1994 Agreement, and thus this provision plainly refers to disputes related to products delivered under the 1994 Agreement." Id. The court also stated as follows:
We conclude that disputes arising under the pre-1994 contracts are not governed by the ADR Clause of the 1994 Agreement." First, it is clear that [the ADR provision] alone does not reach disputes related to products shipped under earlier agreements. Applicable to disputes "arising out of or relating to the Products furnished" under the 1994 Agreement, this ADR provision is very broad in scope and certainly reaches all claims raised by Security with respect to the 1994 Agreement. However, this breadth of scope does not extend over time. Paragraph 12 specifies that the term of the agreement is twelve *700 months, and [the ADR provision] does not purport to reach disputes related to pre-1994 agreement products.
Id. at 373 (citation omitted; emphasis added).
Although the ADR provision at issue in Security Watch is different from the mandatory arbitration provision at issue in the instant case in some respects, we nevertheless find that the same reasoning applies to its interpretation. The mandatory arbitration provision in the instant case clearly refers to disputes, controversies, and questions arising under "this Agreement." Unquestionably, that provision is broad; however, as stated in Security Watch, "this breadth of scope does not extend over time." Id. Moreover, §§ III(B) of the agreement between CIGNA HealthCare and Anesthesia East sets forth the "Term of Agreement" as follows: "This Agreement shall begin on the Effective Date and shall continue from year to year thereafter, unless terminated as set forth below." That provision clearly reveals that the agreement executed on September 1, 1999 was intended by the parties to be applied prospectively only, not retrospectively.
CIGNA HealthCare nevertheless challenges the trial court's judgment denying its exception and alternative motion, citing a number of federal cases which it says stand for the proposition that a broad arbitration clause, such as the one contained in the agreement between CIGNA Health-Care and Anesthesia East, should be interpreted to apply to disputes, controversies, and questions involving treatment rendered prior to its execution date, September 1, 1999. We have reviewed those cases and find them inapposite to the issues before this court, which must be decided on the basis of the express language of the agreement between the parties to this particular agreement. The cases cited by CIGNA HealthCare are all based on contract language that is crucially different than the language at issue in the instant case. For example, in Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330 (10th Cir.1993), the parties agreed to arbitrate "any controversy between [the parties] arising out of [plaintiff's] business or this agreement." Id. at 332 (emphasis in original). Additionally, in R.M. Perez & Associates, Inc., v. Welch, 960 F.2d 534 (5th Cir.1992), the contract signed by the party seeking to avoid a mandatory arbitration clause contained the following provision: "In consideration of your ... continuing an account or accounts in my name or for me for the purchase or sale of property, I agree with you ... [that] all my relations and dealing with [you] are subject to this agreement." Id. at 539.
Accordingly, the trial court's interpretation of the mandatory arbitration provision in the contract between CIGNA Health-Care and Anesthesia East is legally correct.

Claims asserted by Lakeland Anesthesia
Lakeland Anesthesia was originally the only named plaintiff in the instant case. In its original petition, Lakeland Anesthesia stated in Paragraph II that it had "submitted claims to CIGNA Health-Care of Louisiana, Inc. according to the terms of a group practice managed care agreement or other similar contract at any time since January 1, 1991." In its Amended and Restated Petition, Lakeland made the same statement in Paragraph V. In Paragraph XIV of the Amended and Restated Petition, Lakeland Anesthesia asserts as follows:
At all times pertinent and material hereto, Lakeland and Defendant had a contract under which Defendant was obligated to pay or otherwise compensate *701 Lakeland for medical services rendered or provided to Defendant's subscribers.
In fact, Lakeland Anesthesia specifically asserted a "Breach of Contract" claim beginning with Paragraph XXVIII of its Amended and Restated Petition. Lakeland Anesthesia also refers to CIGNA's Group Practice Managed Care Agreements, Hospital Managed Care Agreements, and or other similar contracts in its Motion for Class Certification, and asserts that CIGNA agreed to make payments to Lakeland Anesthesia "for services rendered to CIGNA enrollees as an `in-network' or `participating' provider, independently and by virtue of an agreement between CIGNA and Columbia/HCA." Similar allegations to those found in Lakeland Anesthesia's First Amended and Restated Petition are contained in its Second Amended and Restated Petition, the purpose of which was to add the claims asserted by Anesthesia East.
Despite all of Lakeland Anesthesia's allegations clearly based on the agreement between CIGNA HealthCare and Columbia/HCA, the question that this court must decide in order to determine whether the trial court correctly denied CIGNA HealthCare's exception and alternative motion to Lakeland Anesthesia's claim is whether a nonsignatory to an agreement containing an arbitration clause may be required to submit claims to arbitration prior to seeking judicial relief. As noted above, the first principle established by AT & T Technologies for determining whether a given dispute must be submitted to arbitration is that "`arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" 475 So.2d at 648.
Nevertheless, CIGNA HealthCare makes two arguments in support of its claim that Lakeland Anesthesia should be subject to the arbitration provision in its agreement with Columbia/HCA. First, CIGNA HealthCare argues that equitable estoppel requires arbitration of Lakeland Anesthesia's claims. This court has defined equitable estoppel as follows: "the effect of the voluntary conduct of a party whereby he is barred from asserting rights against another party justifiably relying on such conduct and who has changed his position to his detriment as a result of such reliance." Schwegmann Bank and Trust Co. v. Dunne, 96-2410, p. 2 (La.App. 4 Cir. 4/30/97), 693 So.2d 349, 355. However, CIGNA HealthCare has not claimed that its has changed its position in justifiable reliance on any voluntary conduct on the part of Lakeland Anesthesia. Thus, equitable estoppel does not apply to this case.
Second, CIGNA HealthCare argues that a review of the relevant state and federal jurisprudence indicates that, despite the first principle established by AT & T Technologies and quoted above, a party may be required to arbitrate a given dispute on the basis of an agreement containing a mandatory arbitration clause, even if that party is not a signatory to that contract, if the party is a third-party beneficiary to the contract. See, Borsack v. Chalk & Vermilion Fine Arts, Ltd., 974 F.Supp. 293, 300 (S.D.N.Y.1997); Ripmaster v. Toyoda Gosei, Co., 824 F.Supp. 116, 117-18 (E.D.Mich.1993); Lee v. Grandcor Medical Systems, Inc., 702 F.Supp. 252, 255 (D.Colo.1988).
Although we acknowledge the principle established by the federal jurisprudence that a third-party beneficiary to a contract containing a mandatory arbitration provision is subject to that provision, we find nothing in the record to indicate that Lakeland Anesthesia was a third-party beneficiary under Louisiana law to *702 CIGNA HealthCare's agreement with Columbia/HCA. This court set forth the requirements for proving that one is a third-party beneficiary of a contract as follows in Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4th Cir.3/19/97), 692 So.2d 1203:
Under Louisiana law, a contract for the benefit of a third party is referred to as a stipulation pour autri. See, e.g. Whitney National Bank v. Howard Weil Financial Corp., 93-CA-1568 (La.App. 4th Cir.1/27/94), 631 So.2d 1308, 1310... "In order to establish a stipulation pour autri there must be a clear expression of intent to benefit the third party. The third party relationship must form the consideration for a condition of the contract; the benefit may not be merely incidental to the contract." State, In re Adoption of S.R.P., 555 So.2d 612, 618 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1288 (La.1990). A contract, in order to constitute a stipulation pour autri, must be "in writing and clearly manifest an intention to confer a benefit upon a third party". DePaul Hospital v. Mutual Life Ins. Co., 487 So.2d 143, 146 (La.App. 4th Cir.1986).
Obviously, the requirements for proving that Lakeland Anesthesia is a third-party beneficiary to the contract between CIGNA HealthCare and Columbia/HCA under the standard are not present in this case.
Accordingly, we find that the trial court judgment denying CIGNA HealthCare's exception of prematurity/motion for stay pending arbitration is legally correct.

Conclusion
The trial court judgment is affirmed in its entirety.
AFFIRMED.
NOTES
[1] Technically, neither the denial of a dilatory exception of prematurity nor the denial of a motion for stay is an appealable judgment. However, that issue is not raised by the plaintiffs. Accordingly, for purposes of judicial economy, we will decide the issues presented by this appeal in the procedural posture in which they are presented to this court.
[2] United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).