657 So.2d 648 (1995)
In re Joseph C. RODRIGUE, Sr., and Wilda Benoit Rodrigue, Applying for Intrafamily Adoption.
No. 95 CA 0009.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*649 Barry P. Vice, Houma, for petitioners/appellees Joseph Rodrigue, Sr. and Wilda Rodrigue.
Brian J. Marceaux, Houma, for Tina Marie Rodrigue.
Don James Trosclair, Sr., Angola, appellant, in pro. per.
Before LeBLANC, PITCHER and FITZSIMMONS, JJ.
LeBLANC, Judge.
The biological father appeals the trial court judgment of adoption of Don James Trosclair, Jr., granted to Joseph and Wilda Rodrigue. For the reasons stated below, we affirm.
On July 21, 1994, Joseph C. Rodrigue, Sr., and Wilda Benoit Rodrigue filed a petition for the intrafamily adoption of Don James Trosclair, Jr., their grandson. Don, Jr.'s, parents are divorced and Don, Jr., has lived with his grandparents since he was one year old. Don James Trosclair, Sr., the biological father of Don, Jr., was convicted of forcible rape in 1984 and sentenced to the custody of the Louisiana Department of Corrections for twenty-five years. Don, Jr., has muscular dystrophy, is on life support systems, and requires constant attention and assistance.
The Rodrigues sought to adopt Don, Jr., in accordance with La.Ch.C. art. 1194, which provides for the granting of an adoption over the objection of a parent incarcerated in a state penal institution. Attached to the petition was an authentic act of consent to adoption executed by Tina Marie Rodrigue, the mother of Don, Jr. By certified mail dated *650 September 7, 1994, Mr. Trosclair notified the court he had not been served, as required by La.Ch.C. art. 1194 B. Mr. Trosclair's presence at the hearing was ordered by the trial court and Mr. Trosclair was present at the hearing on this matter, held October 28, 1994.
At the beginning of the hearing, Mr. Trosclair claimed he was an indigent and requested an attorney be appointed for him by the court. The court denied Mr. Trosclair's request. The hearing proceeded and after the hearing, judgment was rendered granting the adoption of Don, Jr., by Joseph and Wilda Rodrigue. Mr. Trosclair appeals the judgment granting the adoption.
In his first assignment of error, Mr. Trosclair alleges the trial court erred in denying his request for appointed counsel. He argues due process and fundamental fairness mandate the appointment of counsel for indigent parents in proceedings which will deprive them of their parental rights. In support, Mr. Trosclair cites State in Interest of Johnson, 465 So.2d 134, 138 (La.App. 1st Cir.), affirmed, 475 So.2d 340 (1985), which recognized the duty to furnish counsel for indigent parents in termination proceedings instituted by the State.[1]
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Supreme Court discussed the concept of "due process", noting it is "flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. at 334, 96 S.Ct. at 902. The factors to be considered by courts in determining what due process requires are the private interest that will be affected by the official action; the government's interest; and, the risk that the procedures used will lead to erroneous decisions. Mathews v. Eldridge, 424 U.S. at 334-36, 96 S.Ct. at 903. These factors are to be weighed against the presumption that an indigent's right to appointed counsel is recognized to exist only when the litigant may lose his physical liberty if he loses the litigation. Lassiter v. Department of Soc. Serv. of Durham Cty., 452 U.S. 18, 25-27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981). In Lassiter, the Supreme Court held the decision of whether due process calls for the appointment of counsel at termination proceedings lies with the trial court. After a meticulous application and a careful weighing of the Eldridge factors, Lassiter found the trial court did not err in failing to appoint counsel for an indigent mother in state instituted termination proceedings. Lassiter v. Department, 452 U.S. at 33-35, 101 S.Ct. at 2163.
We, likewise, find the trial court did not err in failing to appoint counsel for Mr. Trosclair in the instant adoption proceedings. We begin with the well-settled generalization that a parent's desire for and right to companionship, care, custody, and management of his or her children is an undeniably important interest. Stanley v. Illinois, 405 U.S. 645, 649-51, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972). This interest is "cognizable and substantial". Stanley v. Illinois, 405 U.S. at 652, 92 S.Ct. at 1213. A parent's interest in the accuracy and correctness of a decision forever altering their parental status is a "commanding one". Lassiter v. Department, 452 U.S. at 27, 101 S.Ct. at 2160.
The state's interest in the adoption proceedings is also significant. The 1991 enactment[2] of the Children's Code, which includes fully articulated adoption procedures for public, private, and intrafamily adoptions, recognizes the importance of well-established, timely procedures for adoption. The title of the code which governs adoption states as its purpose "to promote the permanent placement of available children into suitable homes". La.Ch.C. art. 1167.
In addition, we identify the specific state interest confronted by the facts of this and other instances when individuals desire to adopt the children of incarcerated parents. *651 In such a case, the state has a very real interest in the moral, emotional, mental, and physical welfare of both the child and the community. The state's oversight and coordination of the placement of a child outside the custody of his parent is necessary when the child's welfare or safety or when the protection of the public cannot be adequately safeguarded otherwise. Guilty conduct by the parent evidences the state's need to sanction the placement of such children whenever possible.
Our final consideration is of the risk that an error may lead to an erroneous decision because the incarcerated parent is not represented by counsel. In incarcerated parent adoption proceedings, the governing standard is the best interest of the child.[3] This is determined by the court's consideration of specific factors clearly established and articulated by the legislature[4]. In addition to the safety net of the standard to which the proceeding seeks to attain, the Children's Code also specifies, in great detail, the exact procedure and process which must be followed in this situation. The uncounseled parent is provided with express protections and precise guarantees. La.Ch.C. art. 1194 B and D. Even in this anxious environment, the parent is afforded clearly identified and protected rights.
After a careful weighing of these factors, and balancing them against the presumption against the right to appointed counsel, we cannot say that, in this instance, due process requires the appointment of counsel. The parent's interests, although strong, are not outweighed by the state's critical interests, and the risk of error is not great. We therefore find no error by the trial court in the denial of Mr. Trosclair's request for appointment of counsel. This assignment is without merit.
In his next assignment of error Mr. Trosclair argues the trial court abused its discretion in failing to abide by the procedural requirements of La.Ch.C. art. 1194 and by erroneously interpreting the facts and evidence. Mr. Trosclair asserts the trial court failed to consider expert testimony required by the Children's Code.
La.Ch.C. art. 1194 provides:
A. Notwithstanding provisions of law to the contrary, an adoption may be granted over the objection of a parent or parents incarcerated in a state or federal penal institution, following conviction of a felony which has not been appealed, or which has been affirmed at least once on appeal, when all of the following exist:
(1) The nonincarcerated parent has executed an act of surrender for adoption of the child pursuant to Title XI; the nonincarcerated parent is deceased; or the nonincarcerated parent's rights have been terminated.
(2) The incarcerated parent has not developed or maintained a significant relationship with the child.
(3) The adoption is manifestly in the best interest of the child. In determining the best interest of a child, the court shall consider the following factors:
(a) The nature of the offense resulting in the incarceration of the parent, including all prior criminal activity.
(b) The length of the sentence imposed upon the parent, and the impact of such on the parent's ability to provide a stable, permanent home for the child during the times in the child's life when permanence and stability are important.
(c) Expert testimony concerning the fitness of the adoptive parent or parents and their relationship with the child, the child's relationship with the incarcerated parent, the fitness of the incarcerated parent, and the needs of the child.
(d) Any relevant history of the incarcerated parent, including his or her relationship with the other parent, the child at issue or other children, any history of violence, substance abuse, sexual deviance, mental illness, or personality disorder.

*652 (e) The physical, psychological, and emotional needs of the child, considering the child's entire history and age.
B. The incarcerated parent shall be served and cited as in any adoption proceeding, and shall have the right to attend the adoption hearing and to present any relevant evidence.
C. Unless agreed to by the adoptive parent or parents, the incarcerated parent shall not be allowed to see the adoptive parent or to acquire any identifying information concerning the adoptive parents.
D. The court shall give specific reasons for judgment should the court grant an adoption over the objection of an incarcerated parent under the provisions of this Article.
The statute does not provide that the adoptive parents must prove each element, but rather that all the elements taken together are the factors for the court to consider in determining the best interests. State in Matter of Adoption of S.R.P., 555 So.2d 612, 620 (La.App. 4th Cir.1989), writ denied, 556 So.2d 1288 (1990). While there may be some considerations which might be favorable to the incarcerated parent, the facts of the particular matter before us convince us the combination of factors weighs heavily in favor of the adoptive parents and that the adoption is indeed in the best interest of the child.
Mr. Trosclair was convicted of forcible rape and is currently serving a twenty-five year prison term. Because of the special medical needs of Don, Jr., his home environment must be not just stable and permanent, but specially outfitted and his care-givers must be specially trained. In addition, considering the child's entire history and age, we are satisfied this adoption is in his best interest. These assignments of error are without merit.
The judgment of the trial court granting the adoption of Don James Trosclair, Jr., by Joseph C. and Wilda Benoit Rodrigue is affirmed. Although Mr. Trosclair's appeal was brought in forma pauperis, the costs of an unsuccessful appeal may be assessed against him. Mitchell v. Greenburg, 93-1846 (La. App. 1st Cir. 5/12/94), 640 So.2d 1367. Accordingly, costs of this appeal are assessed to appellant, Don James Trosclair, Sr.
AFFIRMED.
FITZSIMMONS, J., concurs and assigns additional reasons.
FITZSIMMONS, Judge, concurring.
I concur and assign the following additional reasons. An adoption under Children's Code article 1194 terminates the parental rights of the incarcerated parent. Article 1016 mandates appointed counsel for indigent parents in termination proceedings, but only for involuntary terminations brought under Title 10, not for actions under Title 12. An article 1194 adoption is instituted under Title 12.
NOTES
[1] We find Johnson distinguishable from the issue of the duty in the instant adoption proceedings to furnish counsel for Mr. Trosclair. In Johnson, the state had initiated abandonment proceedings on behalf of a minor child, based on desertion or failure to provide care, pursuant to now repealed La.R.S. 9:403. In the adoption presently before us, the proceedings for an intrafamily adoption were initiated by Don, Jr.'s, grandparents.
[2] Acts 1991, No. 235.
[3] La.Ch.C. art. 1194 A(3).
[4] These factors include the nature of the offense resulting in the incarceration, the length of sentence, the relationship between the child and the incarcerated parent, the incarcerated parent's history and the needs of the child. La.Ch.C. art. 1194 A(3).